**NAYDENSKIY LAW FIRM, LLC**
*426 Main St, #201, Spotswood, NJ, 08884, Naydenskiylaw@gmail.com, (718) 808-2224*

**BY ECF**

July 10, 2023

**Honorable Judge Taryn A. Merkl**
**United States District Court**
**Eastern District of New York**
**225 Cadman Plaza East**
**Brooklyn, New York 11201**

Re:    Calle Urgiles v. Nevada Diner Inc. et al, 22-cv-05323-DLI-TAM

<u>**MOTION FOR SETTLEMENT APPROVAL**</u>

Dear Honorable Judge Merkl,

We represent Plaintiff Edgar Eliseo Calle Urgiles ("Plaintiff") in the above-referenced action. We write to respectfully request judicial approval of the parties' proposed settlement agreement, attached hereto as Exhibit "A". The agreement provides payment of Twelve Thousand Five Hundred Dollars ($12,500), inclusive of attorneys' fees and costs. For the reasons outlined below, Plaintiff submits that the Court's approval is warranted.

BACKGROUND

Plaintiff filed a Complaint on September 7, 2022, asserting, *inter alia*, that Defendants Nevada Diner Inc. d/b/a Georgia Diner ("Defendant") and Dimitrios Kaloidis ("Mr. Kaloidis") allegedly violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay him minimum wage for all hours worked per week, and failing to provide accurate wage statements. On November 18, 2022, the corporate Defendant answered the Complaint in which it denies all allegations of wrongdoing against it. Defendant filed a Suggestion of Death concerning Mr. Kaloidis, and he was dismissed on by this Court as a defendant on March 9, 2023. After many discussions, the parties reached a resolution.

CLAIMS AND DEFENSES

Plaintiff alleges he was not paid minimum wage for the times he was required to work per work week. Additionally, Plaintiff alleges Defendants failed to provide him with accurate wage statements as required by NYLL§195.

Defendant expressly denied the claims made against it and maintains that Plaintiff was properly paid for all time worked. The Defendant produced signed time records from an electronic

time clock, which it maintains automatically calculated Plaintiff's wages, including overtime and spread of hours pay. The Defendant also produced a fully executed LS54 Wage Notice and an arbitration agreement, which it maintains governed the claims Plaintiff asserted in this lawsuit. Lastly, Defendant asserts that Plaintiff does not have standing to assert wage notice and wage statement violation claims in federal court following recent decisions in this district. *See, e.g.*, *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *1 (E.D.N.Y. April 25, 2023).

In order to avoid further litigation, trial and/or potentially motion practice, the parties agreed to proceed to settle the case.

SETTLEMENT AMOUNT

The Agreement between Plaintiff and Defendants provides that Plaintiff's claims will be resolved for a total of $12,500.00, distributed as follows:

• $8,333.34 to Plaintiff;

• $4,166.66 to Plaintiff's counsel for his attorney's fees and costs.

Now, with settlement complete and the necessary documents fully executed, the parties request the Court issue one final order approving this settlement agreement, which is attached here, as fair and reasonable. In this regard, the parties represent to the Court that the Agreement: (a) is fair and equitable to all Parties; (b) reasonably resolves a *bona fide* disagreement between the Parties with regard to the merits of the Plaintiff's claims; (c) contains appropriate monetary consideration for the Plaintiff based on the claims he has raised; and (d) discontinues the action, with prejudice, and on consent. The parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement, and dismissal of these claims with prejudice, in exchange for the consideration set forth in the Agreement. The Agreement is the result of arms-length bargaining among the parties and reflects the parties' desire to settle and compromise fully and finally all of Plaintiff's claims asserted in this case.

## I.    The Standard

It is well-established that courts approve FLSA settlements "if they are reached as a result of contested litigation to resolve bona fide disputes." *Weston v. TechSol, LLC*, No. 17 CV 0141 (CLP), 2018 U.S. Dist. LEXIS 166574, at *10 (E.D.N.Y. Sep. 26, 2018). "The adversarial nature of an FLSA dispute is generally considered to be evidence of the fairness of the settlement." *Weston*, No. 17 CV 0141 (CLP), 2018 U.S. Dist. LEXIS 166574, at *10. That is, as long as the FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *See Ceesae v. TT's Car Wash Corp.*, No. 17 CV 291 (ARR)(LB), 2018 U.S. Dist LEXIS 1796, at *3 (E.D.N.Y. Jan. 3, 2018), adopted by 2018 U.S. Dist. LEXIS 20237, No. 17-CV-291 (ARR) (LB) (E.D.N.Y. Feb. 6, 2018).

## II.    The Settlement Agreement Is Fair and Reasonable And Should Be Approved

### A.    Range of Possible Recovery

The settlement amount itself reflects a compromise of heavily disputed claims. Particularly, Plaintiff alleges Defendants employed him as a busboy from November 2019 until on or about May 7, 2022. Plaintiff alleges he worked 35.65 hours per week and that he was paid on an hourly basis. Plaintiff alleges he was not paid minimum wage pay for hours worked. Plaintiff's case in chief focuses on the allegation that Plaintiff was not given a compliant tip credit notice. Defendant provided Plaintiff with a NYLL 195.1 form which Defendant believes will suffice to satisfy the New York Labor Law tip-credit notice requirement.

As detailed in the attached damages calculation as Exhibit B, in accordance with the complaint, Plaintiff alleges he is owed $23,350.75 in unpaid wages, $23,350.75 liquidated damages, $5,122.90 pre-judgment interest (as of 7/10/2023), and $5,000 statutory damages for violations of wage statement requirements.

Therefore, Plaintiff's best-case award would be $56,824.40. However, as noted above, Defendant denies all liability and dispute Plaintiff's hours worked, and the allegation that Plaintiff is owed any further sums of money, wages, or damages of any kind.

Therefore, in order to avoid protracted and uncertain litigation, a settlement of $12,500.00 is a fair and reasonable settlement conducted at arms-length. This recovery is reasonable and consistent with settlements approved in this Circuit. *See Li v. Hly Chinese Cuisine Inc.*, No. 18-CV-5077 (MMH), 2022 U.S. Dist. LEXIS 92490, at *10 (E.D.N.Y. Mar. 31, 2022) (approving a settlement where the plaintiff obtained 13.8% of the total alleged damages) (*J.* Henry) (collecting cases).

Given these disputed issues, both parties and their counsel submit that a settlement of $12,500.00 is fair and reasonable.

### B. Avoiding Burdens and Potential Risks of Continued Litigation

As for the second and third *Wolinsky* factors, ongoing litigation would also likely involve costly discovery, motion practice over summary judgment, in addition to other expenses associated with trial. Even if successful at both the summary judgment and trial stages, Plaintiff would face a difficult challenge in recovering a greater judgment than the Settlement Sum obtained here. Indeed, Plaintiff understands that if he were to continue with the litigation that he may receive a small amount in damages given the disputed number of hours he allegedly worked per week. With litigation expenses only expected to rise for all parties, the Settlement Sum is especially fair and reasonable.

### C. Arm's-Length Bargaining and Lack of *Cheeks* Admonishments

Next, the parties' arm's-length bargaining over days of private settlement discussions that resulted in an agreement accepted by both parties, as well as the ability to resolve the matter without either party incurring further substantial litigation costs, weigh in favor of finding the settlement fair and reasonable. This case does not involve the litigation of particularly novel and complex issues. Rather, Plaintiff's wage-and-hour claims involve legal issues that have been litigated in many other cases; therefore, continued litigation likely would not significantly advance the development of the law.

Furthermore, the Agreement here does not contain any terms that would militate against the Court approving them. For instance, the release contained in the Agreement is tailored to FLSA, NYLL, and other wage and hour claims. *See Li*, No. 18-CV-5077 (MMH), 2022 U.S. Dist. LEXIS 92490, at *16. The Agreement also contains a non-disparagement clause that contains a carve out for truth statements. *See Ibarra v. W&L Group Constr. Inc*., No. 19-cv-01582-AMD-MMH, 2022 U.S. Dist. LEXIS 140817, at *3 (E.D.N.Y. Aug. 8, 2022) (approving amended proposed settlement that contained a carve out for truthful statements despite confidentiality requirements) (*J.* Henry).

Accordingly, the Court should approve the Agreement as fair and reasonable.

ATTORNEY FEES

The settlement agreement provides that Plaintiff's counsel will recover $4,166.66 (inclusive of $ 402.00 in costs), equaling one-third of the $12,500 settlement.

Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases. See Navarrete v. Crystal Deli Inc. (S.D. N.Y. 2022)(citing cases); Pinzon v. Jony Food Corp., No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) ("When using a 'percentage of the fund' approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'" (quoting Meza v. 317 Amsterdam Corp., No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)); Ramirez v. Columbus Rest. Fund IV, LLC (S.D. N.Y. 2022).

As a cross check of contingency fees, the Courts routinely look to the lodestar method. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F.Supp.3d 424 Plaintiff's counsel requests a lodestar of $350 an hour for the principal Gennadiy Naydenskiy.

By way of background, Gennadiy Naydenskiy is a 2013 graduate of the State University of New York at Buffalo  Law School, admitted to the New Jersey Bar and the United States District Court, District of New Jersey, in December  2013, the New York State Bar in February 2014, the United States District Court, Southern District of New York in June 2014, and the United States District Court, Eastern District of New York in July 2014. 99% of Gennadiy Naydenskiy's case load concentrates on wage and hour individual, multi-plaintiff, collective and class actions in this Court, the Southern District of New York, and New York State Courts.  Gennadiy Naydenskiy founded Naydenskiy Law Group in October 2014, a boutique law firm that focus most of their practice on FLSA wage and hour individual, multi-plaintiff, collective and class actions in this Court, Southern District of New York, and State Courts of New York. From August 2018 until September 2021, Gennadiy Naydenskiy was an associate for Michael Faillace & Associates, a heavy volume wage and hour law firm. In September 2021, Gennadiy Naydenskiy returned to being a solo practitioner and continues to focus the practice mostly on wage and hour matters. Thus, the hourly rates are in line with hourly rates approved by  other courts in this District for attorneys with similar experience. "rates for associates have ranged from $200 to $350, with average awards increasing over time.'" *Mugavero v. Arms Acres Inc.*, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (*quoting Vilkhu v. City of New York*, No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009)); *see also Saunders v.  City of New York*, 07 Civ. 830 (SAS), 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving $425 per hour rate for partners with "substantial experience litigating

employment matters" and $200-$300 per hour for associates); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (awarding $425 per hour for partners, $300 per hour for associates, and $150 per hour for paralegal work in ERISA default case); *Torres v. Gristede's Operating Corp.*, 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 Fed. Appx. 1, 14-16 (2d Cir. 2013) (holding that hourly rates of $450 to $550 for partners, $300 for senior associates, $275 for junior associates and $175 for law clerks in a wage and hour case were reasonable); *Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, 2010 WL 4159391 at *8-9 (S.D.N.Y. 2010) (awarding hourly rates of $400 for partners, $350 for counsel, $300 for senior and midlevel associates and $200 for junior associates); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (awarding hourly rates of $450 for partners, $275 for junior associates, $150 for law clerks, and $100 for paralegals). Work performed by Brenda Tapia, a paralegal, is billed at the rate of $125 per hour.

Plaintiff's counsel's lodestar in this case is $1,175 a copy of Plaintiff's billing record is attached as "Exhibit C." Plaintiff's counsel is asking for approximately 2.4 times their lodestar after deducting costs; the amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting *Hyun v. Ippudo USA Holdings et al., No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016)*.; *Shapiro v. JPMorgan Chase & Co., No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014)* ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiff' attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's. requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

## THE SETTLEMENT SHOULD BE APPROVED

The standard for approval of FLSA settlement is well            established in the Second Circuit. As stated in the Report and Recommendation adopted by the Court in *Serebryakov v. Golden Touch Transp. of NY. Inc.:*

> When deciding whether to approve a motion for settlement of in
> dividual FLSA claims, the Court considers whether  the agreeme
> nt reflects a reasonable compromise of disputed issues [rather] t
> han a mere waiver of statutory rights brought about by an emplo
> yers overreaching. In the absence of            a certified class, a
> district court typically considers the following factors to determi

ne whether a settlement of individual FLSA claims is reasonable : ( 1 ) the complexity, expense, and likely duration of litigation ; (2) the stage of the proceedings and the amount of discovery co mpleted; (3) the risks of establishing liability; (4) the risks of est ablishing damages; (5) the ability of defendants to withstand a l arger judgment ; and (6) the range of reasonableness in light of t he best possible recovery and all the risks of litigation.

No. 12 Civ. 3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. July 2, 2013) (Garaufis, J) (citations and internal quotation marks omitted); *see also. e.g.. Calle. et al. v. Elite Specialty Coa tings Plus, Inc., et al.,* No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081 , at *2 (E.D.N.Y. Nov . 21 , 2014) (evaluating and approving a settlement using the above factors as well as comparing the settlement amount to counsel's lodestar); *Jn re Penthouse Executive Cluh Comp. Litig.,* No. 10 Civ. 1 145 (KMW), 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) (citing *Lynn's Food S tores, Inc. v. United States,* 679 F.2d 1350, 1353-

54 (IIth Cir. 1982) ("Courts approve FLSA settlements when they are reached as a result of conte sted litigation to resolve *bona fide* disputes."); *Tiro v. Public House Investments. LLC,* Nos. 11 C iv. 7679 (CM), *et al,* 2013 WL 4830949, at * J O (S.D.N.Y. Sept. 10, 2013) (citing *Johnson v. Br ennan,* No. 10 Civ. 4712 (CM), 201 1 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 201 1); *Lynn's F ood Stores,* 679 F.2d at 1353-

54) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate in dicator of the fairness of the settlement, and approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."); *Yuzmy v. HSBC USA. N.A.,* No. 1 2 Civ. 3693 (PGG), 2013 WL 5492998, at *7 (S.D.N.Y. Oct. 2, 2013) (citing *Lynn's Food Stores , 679 F.2d at 1354; McMahon v. Olivier Cheng Catering & Events. LLC,* No. 08 Civ. 8713 (PGG), 2010 WL 2399328

a reasonable compromise over contested issues, it should be approved."): *Diaz v. Scores Hold ing Co., Inc.,* No. 07 Civ. 8718 (THK), 201 1 W L 6399468, at *2 (S.D.N.Y. July 1 1, 201 1) ("C ourts approve FLSA settlements when they are reached as

a result of contested litigation to resolve *bonafide* disputes. Typically, courts regard the adversari al nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If t he proposed settlement reflects a reasonable compromise over contested issues,

courts will approve the settlement".) (citations omitted); *Hens v. Clientlogic Operating Cm1J.,* N o. 05 Civ. 381S (WMS), 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (approving FLSA - not Rule 23 - settlement where the proposed settlement resolved contested litigation in a *bona fi de* dispute, and was the product of lengthy, vigorous arm's length negotiations between experienc ed counsel).

Lastly, this settlement agreement contains mutual general releases. It does not contain confidentiality or non-disparagement clauses, which are sometimes problematic under *Cheeks*. Parties often settle a "wage-and-hour case hoping to achieve a resolution of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. 2015). The benefit of mutual general releases is that they "operate as a walk away provision" by "permit[ting] each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit."

*Strauss v. Little Fish Corporation*, 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020). So long as the release is mutual, district courts have even approved general releases that waive unasserted, unknown claims. *See Weng v. T&W Restaurant, Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (finding "general release" "releasing plaintiffs and defendants from liability for most claims each *might* have against the other" is "not unfair"); *Plizga v. Little Poland Restaurant, Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (approving "broad but mutual" releases that release "all claims" "for any matter, cause or thing whatsoever").

"General releases are permissible in FLSA settlements where [1] plaintiff is no longer employed by defendants, [2] the releases were negotiated by competent counsel for both sides and [3] the releases are mutual." *Khan v. Young Adult Institute, Inc.*, 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018). Here, Plaintiff no longer works for the Defendant; the Agreement was negotiated by competent counsel for both parties, and the general releases are mutual. *See, e.g.*, *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 556 (W.D.N.Y. Feb. 26, 2018) (finding "mutual general release provisions are a fair and reasonable outcome" where "Plaintiff is no longer an employee of Defendant"); *Plizga*, 2016 WL 9307474, at *6 (approving mutual general release where plaintiff who "no longer works for the defendants"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) (approving mutual general release where plaintiff "is no longer an employee of the defendants, reducing the danger that the release was obtained through improper job-related pressure").

In some instances, Courts will request a "plausible reason[] for seeking reciprocal general releases." *Acosta v. Prudent Management, LLC*, 2021 WL 391332, at *4 (S.D.N.Y. Feb. 4, 2023) (approving mutual general releases). Here, the Defendant maintains that it agreed to settle this case despite having an executed arbitration agreement, an executed LS54 Wage Notice form, time and pay records, and recent case law which threatens that Plaintiff does not have standing to maintain this case before this Court (because Plaintiff arguably does not have standing to assert wage notice claims in federal court, which is the entire basis of Plaintiff's case). Rather than holding Plaintiff accountable for the arbitration agreement that he signed, or raising a defense that would challenge his standing, Defendant is waiving these arguments through and in exchange for mutual general releases to resolve this case more quickly in Plaintiff's preferred forum, which it is not obligated to do.

The mutual general release should be approved. Or, in the alternative, the Defendant requests the opportunity to discuss the mutual general release in further detail at the anticipated *Cheeks* hearing. *See Tapia v. Benny's Burritos, Inc.*, 2018 WL 1635925, at *4 (S.D.N.Y. April 3, 2018) (approving mutual general releases for "dishwashers, cooks, porters and delivery workers").

Based on the above, the proposed settlement, which provides for a payout of $12,500 and was the result of arms-length negotiations should be approved. Further litigation will require both parties to invest substantial time and expenses. While Plaintiff believes he will ultimately prevail on his claims, he prefers a quicker resolution. Based on the above, the settlement of $12,500 falls within the range of reasonableness in light of the best possible recovery and all the risks of litigation, and should be approved. *See, e.g. Calle,* 2014 WL 6621081, at *34 (declaring the settlement agreement fair and reasonable and approving it); *Serebryakov,* 2013 WL 3364393, at * I (adopting Magistrate Judge's Report

and Recommendation to approve FLSA settlement); *Peralta v. Allied Contracting II C01p.,* No. 09 Civ. 953 (NGG)(RER), 201 1 WL 3625501, at *I  (E.D.N.Y. Aug.  17, 2011) (same).


Dated: July 10, 2023


By:     */s/ Gennadiy Naydenskiy*
        Gennadiy Naydenskiy (GN5601)
        426 Main St, #201
        Spotswood, NJ, 08884
        718-808-2224
        *Attorney for Plaintiff*

# EXHIBIT A

## SETTLEMENT AGREEMENT AND NEGOTIATED RELEASE

This Agreement and Negotiated Release ("**Agreement**") is entered into between Edgar Eliseo Calle Urgiles ("**Plaintiff**") and Nevada Diner Inc. d/b/a Georgia Diner ("**Employer**" or "**Defendant**") (collectively, "**Parties**").

**WHEREAS**, on September 7, 2022, Plaintiff filed in the United States District Court for the Eastern District of New York a complaint in an action entitled *Urgiles v. Nevada Diner Inc. et al.*, Docket No. 22-cv-05323-DLI-TAM ("**Action**," "**Complaint**," or "**Litigation**");

**WHEREAS**, the Complaint alleges wage and hour claims under the Fair Labor Standards Act and the New York Labor Law as against Employer and Dimitrios Kaloidis;

**WHEREAS**, Defendant filed a Notice of Statement Noting Death concerning Dimitrios Kaloidis on November 18, 2022;

**WHEREAS**, Defendant has denied the allegations contained in the Complaint and continues to deny any wrongdoing;

**WHEREAS**, Defendant does not admit to individual, class, or collective liability or to the suitability of the Litigation for class or collective action litigation;

**WHEREAS**, the Court has not made any findings with respect to the merits of the claims asserted in the Action or otherwise;

**WHEREAS**, the Parties agree that there are bona fide disputes between them in this Litigation and agree that it is desirable that the Litigation be settled upon the terms and conditions set forth below to avoid further expense and uncertain, burdensome, and protracted litigation;

**WHEREAS**, it is Defendant's position that it is entering into this Agreement solely for the purpose of avoiding the costs of litigation and amicably resolving all matters in controversy, disputes, causes of action, claims, contentions, and differences of any kind that have been or could have been alleged by the Parties against each other concerning Plaintiff's employment;

**WHEREAS**, the Parties negotiated the resolution of this matter at arm's-length, holding continued informal and formal settlement discussions regarding their respective settlement positions. The Parties were able to agree to a settlement in principle, which has been finalized and memorialized into this Agreement;

**WHEREAS**, the Parties have agreed to fully and finally resolve all matters between them and to sever their relationship in accordance with and pursuant to the terms and conditions set forth herein;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.    **Additional Definitions.**

1.1.    "**Court**" shall mean the United States District Court for the Eastern District of New York, the Honorable Taryn A. Merkl presiding.

1.2.    "**Days**" shall mean calendar days, except that if the final day in any time period falls on any weekend or federal holidays, the subsequent non-federal holiday / weekday shall be deemed to be the applicable final day.

1.3.    "**Defendant's Counsel**" shall mean:

> Ian-Paul A. Poulos, Esq.
> CLIFTON BUDD & DEMARIA, LLP
> The Empire State Building
> 350 Fifth Avenue, 61st Floor
> New York, New York 10118
> Tel:    (212) 687-7410
> Fax:    (212) 687-3285

1.4.    "**Effective Date**" shall mean the later of the following dates: (a) the eighth day after Plaintiff executes this Agreement, (b) the day of the entry of an order by the Court granting final approval of the Agreement, if there are no appeals; or (c) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

1.5.    "**Non-Wage Claims**" shall mean claims, charges, complaints, liabilities, obligations, promises, agreements, damages, actions, and expenses (including attorney's fees and costs) of any nature whatsoever, known or unknown, that were brought or could have been brought by Plaintiff or Releasees as against each other concerning claims arising from or during Plaintiff's employment or the separation or termination of Plaintiff's employment, including without limitation, claims based in contract, tort, constitutional, statutory or common law, and claims under any federal, state, or local statute, order, law or regulation, governing terms or conditions of employment, including but not limited to discrimination, retaliation, or harassment in employment on the basis of any protected characteristic, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Americans With Disabilities Act (ADA), Age Discrimination in Employment Act (ADEA), Genetic Information Nondiscrimination Act of 2008 (GINA), Uniformed Services Employment and Reemployment Rights Act, the Employee Retirement Income Security Act (ERISA) (excluding any claims for accrued, vested benefits), the Equal Pay Act, Section 1981 of U.S.C. Title 42, the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the Immigration Reform and Control Act (IRCA), the Family and Medical Leave Act (with respect to existing but not prospective claims), Emergency Family and Medical Leave Expansion Act, Emergency Paid Sick Leave Act, the New York State Human Rights Law, New York City Human Rights Law, the New York Civil Rights Law (NYCRL), Chapter 25 of the Laws of 2020 (S.8091 – Ramos / A.10153 – Nolan),  Section 125 of the New York Workers' Compensation Law, and Article 23-A of the New York Correction Law, including claims for wrongful discharge, breach of express or implied contract, breach of an implied covenant of good faith and fair dealing, violation of public policy, defamation or misrepresentation, or any claim for attorneys' fees, physical or emotional distress or injuries,

punitive damages, compensatory damages, or any other duty or obligation of any kind or description whether arising in law or equity. The definition of "Non-Wage Claims" does not include wage-related claims, such as those falling under the Wage Release separately defined in this Agreement.

     **1.6.**   "**Person**" means natural persons (including individuals employed by Employer), corporations, partnerships, sole proprietorships, unions, associations, federations or any other kind of entity.

     **1.7.**   "**Plaintiff's Counsel**" shall mean:

> Gennadiy Naydenskiy
> Naydenskiy Law Firm, LLC
> 426 Main St, #201
> Spotswood, NJ, 08884
> Tel: (718) 808-2224

     **1.8.**   "**Released Persons**" or "**Releasees**" shall mean Nevada Diner Inc. d/b/a Georgia Diner, and each of its respective present and former parents, subsidiaries, related or affiliated entities, and their respective past and/or present shareholders, officers, directors, employees, members, partners, managers, fiduciaries, trustees, agents, attorneys, insurers, predecessors, and successors; Nikitas Bouras, and all his representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns; John Singh, and all his representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns; Dimitrios Kaloidis, his estate, and all his representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns; and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity which could be jointly liable with any of them. It is expressly understood that, to the extent Released Persons are not a party to the Agreement, all such Persons are intended third Party beneficiaries of this Agreement.

     **1.9.**   "**Wage Release**" and "**Wage Claims**" shall refer to all causes of action arising under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and / or any federal, state, or local wage statute, code, or ordinance concerning wage and hour matters, from the beginning of time through the Effective Date, that was brought or could have been brought in this Action.

     This release of wage and hour claims includes, but is not limited to, all claims for unpaid minimum wage, overtime, commissions, tips and/or gratuities, whether based on common law or otherwise, and all claims for improper deductions, wage notice and wage statement violations, travel time, spread of hours pay, call-in pay, bonuses, expenses, reimbursements and gratuities during Plaintiff's employment with any of the Releasees, and any other compensation or wages, liquidated damages, compensatory damages, punitive damages, penalties, attorneys' fees, interests, and/or costs related to the claims filed in the Action.

**2.**    **Denial of Liability & No Admission of Wrongdoing.**

     **2.1.**   The Employer has agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached

because this settlement will avoid the further expense and disruption of the Defendant's business activity due to the pendency and expense of litigation.

**2.2.**     Nothing in this Agreement shall be deemed or used as an admission of liability by Defendant or Releasees. Releasees do not admit to liability or to the suitability of the current action for class litigation. Defendant and all other Releasees deny each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in Plaintiff's pleadings in the Litigation and in any other proceeding, document, or statement whatsoever by or on behalf of Plaintiff. Plaintiff and Employer understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by Defendant or Releasees of guilt or non-compliance with any federal, state, or local statute, order, regulation or ordinance, public policy, tort law, contract (whether oral or written, express, or implied), common law, Defendant's policies or practices, any benefit plans, compensation or commission plans, or procedures of any other wrongdoing whatsoever.

**2.3.**     Whether or not this Agreement becomes effective, neither this Agreement, nor any exhibit, document, or instrument delivered hereunder, nor any statement, negotiations, transactions, or proceedings in connection therewith, shall in any event be construed as, or be deemed to be, or be offered by Plaintiff in any action or proceeding of any kind as evidence of: (i) an admission or concession on the part of the Releasees of any liability or wrongdoing or of any violation of any federal, state, or local statute, rule, regulation, or principle of common law or equity; or (ii) an admission or concession on the part of the Defendant or the Releasees that Plaintiff has suffered any damage.

**3.**     <u>**Conclusion of Employment.**</u> Plaintiff agrees and confirms that to the best of his knowledge and recollection he has returned all property of Defendant in his possession, custody, or control, including, for example, any and all keys, equipment, supplies, documents, reports, manuals, computer media, or business records.

**4.**     <u>**Release.**</u>

**4.1.**     <u>**Plaintiff's Wage Release.**</u> In consideration of the covenants, promises, and undertakings contained in this Agreement, Plaintiff knowingly and voluntarily releases and forever discharges Releasees of and from any and all Wage Claims, as defined in Paragraph 1.9, consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

**4.2.**     <u>**Mutual General Release.**</u> In consideration of the covenants, promises, and undertakings contained in this Agreement, Plaintiff and Releasees hereby release, waive, and forever discharge each other from, or in respect of, all Non-Wage Claims, as that term is defined in Paragraph 1.5 above, from the beginning of time through and including the date Plaintiff executes this Agreement.

**4.3.**     For avoidance of doubt, the releases in Paragraph 4.1 and Paragraph 4.2 (collectively, "**Released Claims**") also apply to claims and rights that were not expressly mentioned in the Complaint. The releases provided in the Released Claims are given in exchange for monetary consideration, mutual covenants, and other undertakings to which the Plaintiff was not otherwise entitled, as set forth in this Agreement. Portions of this monetary consideration and these mutual covenants and other undertakings are additional in nature and separately support the

release of claims concerning the wage causes of action pleaded in this Litigation and non-wage causes of action released by this Agreement. The Plaintiff confirms and agrees that these additional items constitute good and fair consideration provided in exchange for the Released Claims.

**5.**   **Covenant Not to Sue.**

    **5.1.**   In consideration of undertakings in this Agreement, Plaintiff, individually and on behalf of his heirs, executors, administrators, agents, and assigns, promises not to sue the Releasees, both in their individual and respective capacities, concerning any Released Claims.

    **5.2.**   Plaintiff represents that he has no pending claims, in any forum, against Releasees concerning any Released Claims. Plaintiff agrees that if any court, tribunal, or administrative agency of competent jurisdiction assumes or has assumed jurisdiction over any such claims, he will promptly request in writing that the court, tribunal, or administrative agency withdraw the matter with prejudice.

**6.**   **Limitations on the Release.**  For the avoidance of doubt, the Release and Covenant Not to Sue in this Agreement are limited by the following:

    **6.1.**   Nothing in this Agreement is intended to, or shall, release the Parties from their obligations under this Agreement. Any Party may institute an action or proceeding to enforce this Agreement. The Parties hereby designate all Releasees as third-party beneficiaries that have the right, respectively, to enforce and benefit from this Agreement.

    **6.2.**   Nothing contained in this Agreement is intended to, or shall, interfere with Plaintiff's rights under federal, state, or local civil rights or employment discrimination laws (including, but not limited to, Title VII, the ADA, the ADEA, GINA, USERRA, or their state or local counterparts) to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation, none of which shall constitute a breach of this Agreement. Plaintiff shall not, however, be entitled to any relief, recovery, or monies in connection with any Released Claims brought against Employer and/or any of the Releasees, regardless of who filed or initiated any such complaint, charge, or proceeding.

**7.**   **Bona Fide Dispute.**  After consultation with Plaintiff's Counsel, and in consideration of all the facts and circumstances surrounding his alleged employment with the Defendant, Plaintiff agrees that this Agreement is a settlement of disputed claims. The Parties agree that there are *bona fide* disputes as to whether Plaintiff could prevail on the merits of his claims, and that the amounts being paid to Plaintiff, as set forth below, are a fair and reasonable resolution to these *bona fide* disputes. Plaintiff stipulates and agrees that the terms of this Agreement represent a reasonable compromise of *bona fide* disputes regarding his entitlement to statutory wages, including minimum wage compensation, overtime compensation, liquidated damages, penalties, and any other relief available under the FLSA and NYLL.

8.     **Payment.**

8.1.    As good consideration for Plaintiff's promises and undertakings under this Agreement, Employer agrees to pay, or have paid on its behalf, to Plaintiff and Plaintiff's Counsel a total gross sum of **$12,500.00** ("**Settlement Sum**").

8.2.    Payment of the Settlement Sum shall be made in one payment within thirty (30) days of the Effective Date.

8.3.    Payments shall be made by check. The checks shall be delivered to Plaintiff's Counsel in accordance with the payment schedule described in Paragraph 8.2. From the Settlement Sum, and subject to Court approval, Plaintiff and Plaintiff's Counsel will receive the following total gross amounts:

8.3.1.    "Naydenskiy Law Firm, LLC" in the amount of $4,166.66.

8.3.2.    "Edgar Eliseo Calle Urgiles" in the amount of $8,333.34

8.4.    Employer's payment obligation under this Agreement shall be fully satisfied upon delivery of the checks to Plaintiffs' Counsel pursuant to Paragraph 8.3 of this Agreement. Employer and Releasees shall bear no responsibility for further distribution of the Settlement Sum.

8.5.    Delivery of the settlement checks pursuant to Paragraph 8.3 shall be conditioned on Plaintiff and Plaintiff's Counsel executing any necessary IRS forms. No payments shall be made to either Plaintiff or Plaintiff's Counsel unless and until both Plaintiff and Plaintiff's Counsel have submitted the properly executed tax forms described in this Paragraph 8 of this Agreement to Defendant's Counsel.

8.6.    No salary, severance pay, benefits, vacation pay, sick pay, or other payments or additional monies beyond the sums identified as the Settlement Sum in this Paragraph 8 will be made by Employer to Plaintiff.  By signing this Agreement and receiving the payments described herein, Plaintiff expressly agrees that the Employer and Releasees owe him no further wages, payments, damages, or benefits relating to or resulting from his claims and allegations that are covered by the terms of this Agreement, except as provided herein.

9.     **Tax Liability.**  Plaintiff shall be solely responsible for paying any federal, state, or local taxes which may be due from Plaintiff as a result of the payments made pursuant to this Agreement. Plaintiff shall indemnify and hold Employer harmless from any claims, demands, liens, deficiencies, levies, assessments, executions, judgments, or recoveries by any governmental entity against the Releasees for any Plaintiff due amounts claimed due on account of this Agreement or pursuant to the claims made under any federal, state, or local tax laws, as well as from any costs, expenses, or damages sustained by the Releasees in connection with the foregoing, including any Plaintiff due amount paid by Releasees as taxes, reasonable attorneys' fees, deficiencies, levies, assessments, fines, penalties, interest or otherwise, in addition to any costs, disbursements and/or attorneys' fees reasonably sustained in the course of enforcing the terms of this provision.

**10.    Termination of Action.**  Upon delivery to the Defendant of this executed Agreement, Plaintiff shall deliver to Defendant's Counsel an executed Stipulation of Dismissal with Prejudice, which is enclosed herein as <u>Exhibit A</u>, dismissing all claims in the Action with prejudice against Defendant and without costs or fees assessed against any party except as provided for in this Agreement.  Plaintiff shall then promptly draft and file a letter motion for settlement approval with the Court, after allowing Defendant's Counsel a reasonable amount of time to review said papers, seeking judicial approval of this Agreement and the dismissal of the Action against Defendant with prejudice. The Stipulation of Dismissal with Prejudice shall be submitted to the Court once full and complete payment is received, or by an earlier date if such a date is set by the Court or the Parties otherwise agree in writing.

**11.    Remedies for a Breach of this Agreement.**  In the event of a breach or threatened breach of this Agreement, the Parties agree that they shall first negotiate in good faith to resolve any dispute arising under this Agreement. Should the breach or threatened breach not be resolved after this good faith negotiation, which shall take place for no more than thirty (30) days, the Parties may proceed as necessary to enforce this Agreement and are entitled to any and all remedies available at law. This Court shall retain jurisdiction until Defendant completes the payments as detailed in Paragraph 8.

If Plaintiff fails to comply with any of the terms of this Agreement, the Employer may, in addition to any other remedies it may have, terminate any future payments that remain to be made and reclaim from Plaintiff any amounts already paid under this Agreement to Plaintiff or Plaintiff's Counsel without waiving the releases provided in it.

The Parties mutually agree that this Agreement can be specifically enforced in any court of competent jurisdiction and can be cited as evidence in legal proceedings alleging breach of this Agreement.

**12.    Attorneys' Fees and Costs.** If a party breaches any of the terms of this Agreement, to the extent authorized by New York law, the prevailing party will be entitled to payment of all reasonable attorneys' fees and costs that incurred in the course of enforcing the terms of the Agreement, including demonstrating the existence of a breach and any other contract enforcement efforts.

**13.    No Liens.** Plaintiff warrants and represents that (a) no Medicare payments and/or Conditional Payments (as defined by 42 U.S.C. § 1395y(b), and its implementing regulations) have been made to Plaintiff or on Plaintiff's behalf concerning any Released Claims; and (b) no liens, claims, demands, subrogated interests, or causes of action exist or have been asserted concerning any Released Claims. Plaintiff agrees to indemnify and hold Employer harmless from any and all damages, costs (including court costs), and fees (including attorneys' fees and legal fees) that Employer incurs or suffers in connection with or as a result of Plaintiff's failure to obtain any release of lien relating to or arising from the facts and circumstances of this Litigation, including but not limited to liens or rights of reimbursement asserted against the Settlement Sum by any insurer, government agency, healthcare professional, healthcare provider, attorney, or other entity or person asserting a lien relating to or arising from this Litigation.

**14.    Controlling Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of conflict of laws.

**15.    Full Agreement; No Implied Modification.**  This Agreement contains the full and complete understanding between the Parties hereto and supersedes all prior understandings, whether written or oral pertaining to the subject matter hereof. This Agreement may not be amended or modified otherwise than by written agreement executed by Plaintiff and by a duly authorized representative of Employer.

**16.    Partial Invalidity does not Affect the Rest of the Agreement.** The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement. If any provision of this Agreement is declared illegal or unenforceable by any Court of competent jurisdiction, the Parties agree that the Court shall have the authority to modify, alter, or change the provision(s) in question to make the Agreement legal and enforceable. If this Agreement cannot be modified to be enforceable, excluding the release language in Paragraph 4, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. If the release language in Paragraph 4 is found to be illegal or unenforceable, Plaintiff and Employer agree to negotiate in good faith and execute a binding replacement release(s) that is as close in scope to Paragraph 4 as is permissible under applicable law.

**17.    Non-Enforcement is not a Waiver.** The failure of either Party to insist upon strict compliance with any provision of this Agreement, or the failure to assert any right either Party may have hereunder, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

**18.    Execution in Counterparts.**  This Agreement may be executed in counterpart by each Party. Facsimile or electronically signed and/or transmitted counterparts will be considered one and the same instrument, and each executed Agreement, when taken together, shall constitute a complete Agreement.

**19.    Amendment.** Except as provided in Paragraph 16 above, this Agreement may not be modified, altered, or changed without the express written consent of both Parties wherein specific reference is made to this Agreement.

**20.    Joint Participation in Preparation of Agreement.** The Parties participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

**21.    No Consideration Absent Execution of This Agreement.** Plaintiff understands and agrees that he will not receive the monies and/or benefits specified in Paragraph 8 unless and until he executes this Agreement, Plaintiff and Plaintiffs' Counsel both provide executed tax forms in compliance with Paragraph 8.5, and the Agreement is approved by the Court.

**22.    No Other Assurances.** Plaintiff acknowledges that in deciding to sign this Agreement Plaintiff has not relied on any promises or commitments, whether spoken or in writing, made to Plaintiff by any person, except for what is expressly stated in this Agreement. This Agreement constitutes the entire understanding and agreement between the Parties.

23. **Successors and Assigns.** Employer may freely assign this Agreement at any time. This Agreement shall inure to the benefit of Employer, Releasees, and their respective successors and assigns, including, but not limited to, any corporation, individual, partnership, or other entity which may acquire all or substantially all of Defendant's or Releasees' assets and business or with or into which Defendant or Releasees may be consolidated or merged.

24. **Effective Date.** This Agreement shall not become effective until the Effective Date, as that phrase is defined in Paragraph 1.4 of this Agreement.

25. **Acknowledgements by Employee.** By signing this Agreement, Plaintiff acknowledges that he has read this Agreement and understands that by signing this Agreement he is giving up important rights. Plaintiff acknowledges that he had adequate opportunity to discuss the terms of this Agreement and release of claims with his legal counsel, and that he did so. Plaintiff acknowledges that it is his choice to release and forever waive the claims released in Paragraph 4 in return for the benefits set forth in this Agreement, and this choice was made after careful thought, after consulting with his attorneys.

Plaintiff further acknowledges that Plaintiff is waiving and releasing claims under the Age Discrimination in Employment Act (ADEA), as amended, and has had twenty-one (21) days to consider the terms of this Agreement and consult with an attorney of Plaintiff's choice, although Plaintiff may sign it sooner if desired, and changes to this Agreement, whether material or immaterial, do not restart the 21-day period. In addition, Plaintiff shall have an additional seven (7) days from signing this Agreement to revoke consent to Plaintiff's release of claims under the ADEA by delivering notice of revocation to Defendant's Counsel by mail or overnight delivery before the end of the seven-day period. If Plaintiff revokes the ADEA release, the Employer shall have the option of treating this Agreement as null and void in its entirety.

26. **Headings.** The headings are not part of the provisions hereof and shall have no force or effect and are provided for the convenience of the parties only; they shall not be deemed in any manner to modify, explain, expand, or restrict any of the provisions of this Agreement.

27. **Signatories' Representations.** The individuals affixing their signatures to this Agreement represent and warrant that they have the authority to enter into this Agreement on their own behalf and/or on behalf of the entities they represent.

**AL FIRMAR ESTE DOCUMENTO, RECONOZCO QUE MIS ABOGADOS ME TRADUJERON ESTE ACUERDO, QUE ENTENDÍ LA TRADUCCIÓN Y ACEPTO LOS TÉRMINOS DEL ACUERDO.**

Agreed to and accepted on this date: _07/07/2023_____

_____
Plaintiff: Edgar Eliseo Calle Urgiles

Agreed to and accepted on this date: _Jul 10, 2023_____

_Nikitas Bouras_____
Nikitas Bouras (Jul 10, 2023 12:21 EDT)
Employer: Nevada Diner Inc. d/b/a Georgia Diner

By: _Nikitas Bouras_____

Title: _Managing Director_____

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| EDGAR ELISEO CALLE URGILES, *individually and on behalf of others similarly situated*, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| NEVADA DINER INC. d/b/a Georgia Diner, | : |
| | : |
| Defendant. | : |
| | : |

**STIPULATION OF
DISMISSAL WITH PREJUDICE**

Docket No.: 22-cv-05323-DLI-TAM

------------------------------------------------------------------x

     **IT IS HEREBY STIPULATED AND AGREED**, by and between Plaintiff and Nevada Diner, Inc. d/b/a Georgia Diner in the above-captioned action through their undersigned counsel that, whereas no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party has an interest in the subject matter of the action, in accordance with Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the Complaint in the above-captioned action and all claims alleged therein be dismissed with prejudice.

Dated: July _____, 2023           Dated: July _____, 2023

**NAYDENSKIY LAW FIRM, LLC**      **CLIFTON BUDD & DeMARIA, LLP**

_____      _____

Gennadiy Naydenskiy, Esq.            Ian-Paul A. Poulos
*Attorneys for Plaintiff*              *Attorneys for Defendant*
426 Main St, #201                 The Empire State Building
Spotswood, NJ, 08884            350 Fifth Avenue, 61st Floor
Tel: (718) 808-2224              New York, New York 10118
                                     (212) 687-7410

**SO ORDERED:**

_____      _____

Honorable Taryn A. Merkl               Date

# EXHIBIT B

| Plaintiff | Pay Period From | To | No. Weeks in Pay Period | Hours Per Week in Period | Calc. Regular Rate of Pay | Calc. OT Rate of Pay | Minimum Wage Rate | Minimum Overtime (OT) | Lawful Weekly Pay | "Credited" Weekly Pay | Underpayment Per Week | Unpaid Wages & OT | Liq. Damages on Wages & OT | Weekly Wage Statement | Pre Jud. Interest (PJI) on OT & Wages | Total Per Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Edgar Eliseo Calle Urgiles** | 11/1/2019 | 12/31/2019 | 9 | 35.65 | $ 10.00 | $ 15.00 | $ 15.00 | $ 22.50 | $ 534.75 | $ 356.50 | $ 178.25 | $ 1,604.25 | $ 1,604.25 | $ 5,000.00 | $ 521.34 | $ 8,729.84 |
| | 1/1/2020 | 12/31/2020 | 52 | 35.65 | $ 10.00 | $ 15.00 | $ 15.00 | $ 22.50 | $ 534.75 | $ 356.50 | $ 178.25 | $ 9,269.00 | $ 9,269.00 | | $ 2,524.20 | ######## |
| | 1/1/2021 | 12/31/2021 | 52 | 35.65 | $ 10.00 | $ 15.00 | $ 15.00 | $ 22.50 | $ 534.75 | $ 356.50 | $ 178.25 | $ 9,269.00 | $ 9,269.00 | | $ 1,688.85 | ######## |
| | 1/1/2022 | 5/7/2022 | 18 | 35.65 | $ 10.00 | $ 15.00 | $ 15.00 | $ 22.50 | $ 534.75 | $ 356.50 | $ 178.25 | $ 3,208.50 | $ 3,208.50 | | $ 389.98 | $ 6,806.98 |
| | | | | | | | | | | | **TOTAL:** | $ 23,350.75 | $ 23,350.75 | $ 5,000.00 | $ 5,124.37 | ######## |

# EXHIBIT C

**NAYDENSKIY LAW FIRM LLC**
**281 Summerhill Rd, Suite 210**
**East Brunswick, NJ 08816**

Invoice submitted to:

Nevada Diner

| | |
|---|---|
| Invoice # | **20134** |
| Invoice Date | **07/10/2023** |
| For Services Through | 07/10/2023 |
| Terms: | **N/A** |

| <u>Date</u> | <u>By</u> | <u>Service Summary</u> | <u>Hours/Rate</u> | <u>Amount</u> |
|---|---|---|---|---|
| In Reference To: **Neveda Diner (Labor)** | | | | |
| 06/22/2022 | Brenda Tapia | started drafting DL: Nevada Diner | 0.50 at $ 125.00/hr | $ 62.50 |
| 06/22/2022 | Brenda Tapia | started drafting Damages Chart re: Nevada Diner, called client to clarify re: what month in 2019 did he start working? | 0.50 at $ 125.00/hr | $ 62.50 |
| 09/07/2022 | Gennadiy Naydenskiy | review and edit draft complaint | 1.00 at $ 350.00/hr | $ 350.00 |
| 09/07/2022 | Gennadiy Naydenskiy | review proposed summons, review and sign civ cover | 0.10 at $ 350.00/hr | $ 35.00 |
| 01/05/2023 | Gennadiy Naydenskiy | review and edit amended complaint; tc w/ pl re: 26a | 0.50 at $ 350.00/hr | $ 175.00 |
| 05/04/2023 | Gennadiy Naydenskiy | review and redline draft agreement | 0.30 at $ 350.00/hr | $ 105.00 |
| 07/06/2023 | Gennadiy Naydenskiy | tc w/ cl | 0.10 at $ 350.00/hr | $ 35.00 |
| 07/07/2023 | Gennadiy Naydenskiy | tc w/ cl re: sett agreement | 0.40 at $ 350.00/hr | $ 140.00 |
| 07/10/2023 | Gennadiy Naydenskiy | edit draft cheeks motion, review docket, edit damages. send draft motion to oc | 0.50 at $ 350.00/hr | $ 175.00 |
| 07/10/2023 | Gennadiy Naydenskiy | review oc edits and email oc | 0.10 at $ 350.00/hr | $ 35.00 |
| In Reference To: **Neveda Diner (Expenses)** | | | | |
| 09/07/2022 | Brenda Tapia | *Filing Fee* Filing Fee | $402.00 | $ 402.00 |

*Total Hours:* 4.00 hrs
*Total Labor:* $ 1,175.00
*Total Expenses:* $ 402.00
**Total Invoice Amount: $ 1,577.00**
**Previous Balance:** $ 0.00
**Balance (Amount Due): $ 1,577.00**